### George J. HOHMAN

v.

### Cornelius HOGAN, Individually and in his capacity as Commissioner of Corrections for the State of Vermont.

### Civ. A. No. 77–286.

United States District Court, D. Vermont.

Sept. 28, 1978.

*ed States Dep't of Defense,* 419 F.Supp. 663, 666 (S.D.N.Y.1976).

670

David W. Curtis, Montpelier, Vt., for plaintiff.

Peter B. Brittin, Robert L. Orleck, Asst. Attys. Gen., Dept. of Corrections, Montpelier, Vt., for defendant.

## MEMORANDUM AND ORDER

HOLDEN, Chief Judge.

The plaintiff, a Vermont prisoner convicted of second degree murder, is incarcerated in the Federal Prison System at the United States Penitentiary at Marion, Illinois by Federal and State agreement under the provisions of 28 V.S.A. § 706 and 18 U.S.C. § 5003. He alleges in his complaint the deprivation of constitutional rights under color of state law in violation of 42 U.S.C. § 1983. It is the plaintiff's contention that the defendant has deprived him of his constitutional right to access to the courts by not providing an adequate law library for the plaintiff's use in the preparation of legal papers. The law libraries at Marion contain extensive legal resources for federal law but do not have any Vermont legal materials. It is alleged that due to the deficiency of the Marion libraries, the plaintiff has been unable to meaningfully research issues involved in the appeal from his conviction, pending in the Vermont Su-

preme Court at the time his complaint was filed.[1]

The plaintiff appeared and testified in person in support of his request for injunctive relief. Thereafter, both parties submitted a series of affidavits directed to this issue. The defendant has moved for summary judgment. The numerous papers submitted generate no serious dispute concerning the controlling facts.

Pursuant to an agreement between the Federal Bureau of Prisons and the Commissioner of Corrections for the State of Vermont dated February 25, 1975, following the closing of the Vermont maximum security prison at Windsor, state prisoners requiring close custody are transferred to the federal prison system. *See Rebideau v. Stoneman*, 398 F.Supp. 805 (D.Vt.1975). Once the transfer has been made, the Bureau of Prisons has total discretion to designate the place of confinement within the federal system according to the particular needs of the prisoner and the accommodations available among the various facilities.

In 1971, the State of Vermont established a comprehensive public defender system to provide legal services to the indigent accused of criminal offenses. The program also affords legal assistance to those convicted who seek relief in post-conviction appeals and collateral proceedings in state and federal courts. 13 V.S.A. §§ 5201–5205; 5231–5237. The plaintiff has been the recipient of extensive legal services generously provided under the state defender system in his criminal trial and appeal. He has also been ably represented by the staff of the state defender general in the present proceedings in keeping with the provisions of 13 V.S.A. § 5253(a):

> The defender general has the primary responsibility for providing needy persons with legal services . . . He shall have also the duty of providing legal services to those persons in the custody of the commissioner of corrections.

It is the policy and practice of the Vermont Department of Correction, when time and other circumstances permit, to return prisoners who have been transferred to the federal prison system to Vermont when their presence is required in court proceedings, at least two weeks prior to the scheduled judicial proceeding. In the past, the defendant has provided ample opportunity for state prisoners confined out of state to be present in Vermont to prepare for trial and other hearings. The plaintiff was returned on February 8, 1978 to consult with his trial counsel on his appeal to the Vermont Supreme Court.

State prisoners in custody in federal facilities maintain communication with the Defender General's office by mail, limited telephone calls and infrequent personal visits when the need for a personal conference arises. Two staff attorneys and one paralegal of the State Defender General's office are assigned to the needs of persons in custody. Generally by reason of this limitation the attorneys assigned to correction facilities do not undertake to represent prisoners in civil litigation unless the issues involved are of critical and substantial importance.

Since the closing of the Windsor Prison in 1975, 59 Vermont inmates have been transferred to federal correctional facilities. As of May 4, 1978, 39 inmates, out of a total Vermont prison population of 422 inmates, were incarcerated out of state in either the federal prison system or in other states according to the terms of the New England or Interstate Corrections Compacts. While it must be recognized that the office of the Defender General suffers from staff shortages, it has not been shown that these shortages have resulted in woefully inadequate representation of the relatively few Vermont inmates incarcerated in the federal penitentiary system.

In addition to the services of the office of the Defender General, the plaintiff has access to the library facilities available at his

---

1. The appeal was sustained by the Supreme Court of Vermont. Judgment of conviction was reversed and remanded for new trial.

*State v. Hohman,* 383 A.2d 274 (Vt.Sup.Ct. 1978).

place of confinement at Marion. The affidavit of Richard L. Williams, the Supervisor of Education at the United States Penitentiary, Marion, Illinois, indicates that the Marion law library contains United States Supreme Court decisions, the Federal Reporters, the Federal Supplements, U.S. Code Annotated, Modern Federal Practice Digest, American Jurisprudence and other legal materials. There are four prison libraries at the penitentiary. The main facility is available for use by inmates in the general prison population from 5:30 P.M. to 9:00 P.M. every day of the week, from 8:00 A.M. to 10:30 A.M. on Saturdays and Sundays and from 12:00 P.M. to 3:00 P.M. on Saturdays and Sundays. An inmate may receive permission to use the library at other hours upon request if good cause is shown. If an inmate desires legal materials that are not available in the Marion libraries, he may complete a "Legal Photocopy Request" which is filled by the Shawnee Library system through the Southern Illinois University School of Law at no charge to the inmate. The process normally takes one week. *See* the affidavit of Mary Jeanne McKenzie, the Correctional Facilities Project Director for the Shawnee Library System. Although the Marion libraries do not contain Vermont statutes, Vermont Digests or Vermont Supreme Court decisions, these materials may be obtained through the use of a photocopy request from the Southern Illinois University School of Law. *See* the affidavit of Elizabeth S. Kelly, Law Librarian at the Southern Illinois University School of Law.

The Vermont Law and Documents Library located in Montpelier, Vermont also has a program through which Vermont prisoners may obtain free legal materials wherever they are incarcerated. In an affidavit, Vivian S. Bryan, the librarian in charge of the Montpelier facility, indicated that the library responds to written requests for reproductions of legal materials as well as to requests for basic legal research. An inmate may receive ten free xeroxed pages of legal materials per request; there is no limit to the number of requests an inmate may make. Requests for legal materials are generally responded to within forty-eight hours.

■ The plaintiff, along with all prisoners, has a constitutional right of access to the courts. *Ex parte Hull,* 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034, rehearing denied, 312 U.S. 716, 61 S.Ct. 823, 85 L.Ed. 1146 (1941). When called upon to consider restrictions upon inmates' exercise of this right, the Supreme Court has required that access to the courts must be adequate, effective and meaningful. This standard was applied in *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1950) when the Court held that an indigent defendant could not obtain "adequate and effective appellate review" unless he was supplied by the state with a trial transcript, and in *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) where the Court found that counsel must be appointed to give indigent prisoners "a meaningful appeal" from their convictions. The requirements of this standard became more definitive by way of the recent decision of *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The Supreme Court held:

> . . . that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.

*Id.* at 827, 97 S.Ct. at 1498.

■ The question presented in this case is whether the shortages in the Defender General program and the absence of Vermont legal materials in the Marion libraries deny the plaintiff access to the courts. It becomes the court's task to determine if the total legal assistance program satisfies the requirements enunciated in the alternative in *Bounds v. Smith.* In the evaluation of the facts presented, the court is mindful that any State's program must be viewed as a whole in order to ascertain its compliance with constitutional standards, *Id.* at 832, 97 S.Ct. 1491. While economic factors may be

considered, the cost of protecting a constitutional right cannot justify its total denial, *Id.* at 825, 97 S.Ct. 1491.

■ The crux of the defendant's argument is that the *Bounds* decision requires the State to provide *either* adequate libraries *or* legal assistance, not both. We agree. The defendant continues that the Defender General's office operates in such a way as to give inmates adequate access to the courts. Thus, it is claimed the State has no constitutional duty to maintain Vermont law books in the Marion library. We first turn to an evaluation of the operation of the Vermont Defender General's office.

This court found in *Battick v. Stoneman,* 421 F.Supp. 213 (D.Vt.1976) that an inmate held in custody out of state would experience some reduced access to the Vermont Defender General for Corrections. However, as was true of the plaintiff in *Battick,* the plaintiff in the present case has suffered no interruption of continuing communication with his counsel due to his placement in the federal prison system. The hearings and papers filed in the present case evidence that the plaintiff has had every opportunity to rely on dedicated counsel who has skillfully presented his claim. Counsel appeared in two hearings in this case. The plaintiff was also transferred to Vermont at the State's expense to appear and testify in a state criminal proceeding. While here he instituted two federal actions and has testified in person. The plaintiff has had the able assistance of counsel in the preparation of the appeal of his murder conviction; he was returned to Vermont in connection with the appeal as well. The history of these cases attests to the fact that there has been no impairment of the plaintiff's right to counsel and his concurrent right to access to the courts. See *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 396 (1974); *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1974); *Ex parte Hull, supra.*

■ Therefore, a constitutionally acceptable alternative exists to protect the plaintiff's right of access to the courts. While there is no requirement that the plaintiff avail himself of the services of the Public Defender's office, the Supreme Court's opinion in the *Bounds* case does not impose a duty on this State to provide the plaintiff with a Vermont law library in the eventuality that he chooses not to accept the adequate services of the public defenders. Rather, the Court in *Bounds* found that to preserve an inmate's right of access to the court system, a state must provide either adequate law libraries or adequate assistance from persons trained in the law in the filing of meaningful legal papers. In *Bounds,* the sole prison library in the State of North Carolina was severely inadequate; there was no other legal assistance available to inmates. Under those facts, some remedial action was required to insure that inmates were not denied their constitutional rights. Unlike the *Bounds* case, the facts before us do not present a situation in which both routes an inmate might use to the court system are blocked. The operation of the Public Defender's system serves well to preserve the plaintiff's access to the courts.

Further, we are persuaded that the program of libraries and services available to the plaintiff would satisfy the requirements of the *Bounds* decision, had it been proved that the Public Defender's system alone was insufficient to provide meaningful access to the courts. Although the Marion library is inadequate for the purposes of Vermont legal research, this deficiency is eliminated by the availability to the plaintiff of other sources for Vermont law. The arrangement with the Shawnee Library and the Library of the Southern Illinois University School of Law provides the plaintiff with a ready and cost-free source of Vermont law books. The program run by the Vermont State Library supplements these Illinois programs. Although the use of these facilities might entail some delay, these delays, while unfortunate, have been deemed excusable. In *Bounds,* delays of up to three weeks were excused in some cases. We have been unable to find any instance where requests to the Shawnee Library system have been unavailing. In addition, the

libraries at the penitentiaries at Marion are most complete in the area of federal law. At the hearing held in this case on March 13, 1978, the plaintiff testified that he had spent approximately 400 hours in the library at Marion preparing the complaints in this case. Certainly, the facilities were of substantial assistance to the plaintiff in opening the doors of this court in the § 1983 action.

In sum, we find that the plaintiff's constitutional right to access to the courts is adequately protected within the precept of *Bounds.* The panoply of library facilities and programs available to the plaintiff in addition to the services of the public defender provides extra protection to the plaintiff's right of access to the courts. Viewed as a whole, the Vermont program in conjunction with the federal system amply comply with the constitutional standard established in *Bounds v. Smith, supra.*

Accordingly, the defendant's motion for summary judgment is granted.