Marselle J. BOWERS

v.

Charles FENTON, Warden, Walter Redman, Warden.

Walter H. BROWN, Jr.

v.

Charles FENTON, Warden, Walter Redman, Warden.

Civ. Nos. 78–975, 78–1081.

United States District Court, M. D. Pennsylvania.

Sept. 18, 1979.

Marselle J. Bowers, pro se.

Walter H. Brown, pro se.

Joseph F. Cimini, Asst. U. S. Atty., Lewisburg, Pa., for respondents.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

### I. FACTS

Petitioners are Delaware state prisoners who in consolidated habeas corpus actions under 28 U.S.C. § 2254 challenge the right of the Federal Bureau of Prisons to hold them in custody. Both are inmates who were transferred to the United States Penitentiary at Lewisburg under the terms of an agreement between state and federal officials. The original petitions alleged that the forced move to Lewisburg deprived the petitioners of constitutional rights by cutting off access to counsel, Delaware legal library sources, family visits, and more satisfactory state prison conditions. Furthermore, the petitioners assert that the federal government has no statutory authority to imprison them under present conditions.

### II. THE PROBLEM OF MULTIPLE LITIGATION

The respondents have raised two arguments. First, they ask this Court to dismiss this action, because the petitioners allegedly have similar litigation pending before the Federal District Court for the District of Delaware. The respondents contend that a decision on the merits in the instant case would amount to a waste of judicial effort, because the same issues are already before a district court within the Third Circuit. The record does indeed show that both petitioners have separate civil actions in the District of Delaware attacking the legality of their confinement in Lewisburg and seeking a variety of remedies. It is not clear, however, in which court litigation was first commenced.

The Supreme Court has clearly stated that when identical issues are filed in different federal districts, duplicate litigation should be avoided, but no mechanical rule determines which forum should decide the case. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976); *Kerotest Mfg. Co. v. C–O–Two Co.*, 342 U.S. 180, 183–84, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952). Normally, the court in which the relevant action was first filed should maintain jurisdiction. Nonetheless, the determining consideration should be equity. *Columbia Plaza Corp. v. Security National Bank*, 525 F.2d 620, 627 (D.C.C.1975); *Scott v. Fetzer Co. v. McCarty*, 450 F.Supp. 274, 276–77 (N.D.Ohio, 1977); *Wheeling-Pittsburgh Steel v. Donovan Wire & Iron*, 416 F.Supp. 602, 602–03 (N.D.Ohio, 1976). Relevant factors include convenience of the parties in conducting the litigation and the extent to which the matter can be resolved more efficiently in one district than the other. *Columbia Plaza Corp. v. Security National Bank*, 525 F.2d at 628–29.

Concerning the petitioner's constitutional claims, the respondents are correct in suggesting that this Court stay its hand. The record in the District of Delaware shows that these issues have been developed more fully before that court. Furthermore, the petitioners are represented by counsel in that litigation who are familiar with Delaware laws and, thus, will be in a better position to develop any arguments that may relate to Delaware law. An examination of

Delaware law may be necessary to determine whether plaintiffs had some right or justifiable expectation that they would not be transferred except for misbehavior or upon the occurrence of other specific events which might implicate the due process clause. *Sisbarro v. Warden, Mass. State Penitentiary*, 592 F.2d 1, 3 (1st Cir. 1979). Additionally, the need of access to counsel or to Delaware law library facilities could be more appropriately determined in that forum. Therefore, this Court will not rule on these matters.

■ The situation is quite different, however, with regard to the federal statutory claim. The record demonstrates that this issue has been raised in each of the Delaware cases only once, in a most tangential manner. Before the Middle District of Pennsylvania, conversely, the matter has been addressed by both parties and the Court is ready to rule. Failure to proceed to the merits would simply delay resolution. Such a result would hardly further judicial efficiency.

### III. THE STATUTORY CLAIM

■ The respondents' second contention is that the language of 18 U.S.C. § 5003(a) does in fact give the Federal Bureau of Prisons authority to accept the custody of state prisoners such as the petitioners. The relevant language of this section reads:

> The Attorney General, when the Director shall certify that proper and adequate treatment facilities and personnel are available, is hereby authorized to contract with the proper officials of a State or Territory for the custody, care, subsistence, education, treatment, and training of persons convicted of criminal offenses in the courts of such State or Territory: *Provided*, That any such contract shall provide for reimbursing the United States in full for all costs or other expenses involved.

There is a sharp split in authority on this matter. The petitioners cite *Lono v. Fenton*, 581 F.2d 645, 646–47 (7th Cir. 1978) (en banc) in which the Seventh Circuit held that § 5003(a) authorizes transfers of state prisoners to federal institutions only for the purposes of "specialized treatment." Speaking for the majority, Judge Wood gave two reasons for this interpretation. First, the language of § 5003(a) places special emphasis on "treatment facilities" and makes their adequacy a condition precedent to any transfer. Judge Wood reasoned that this "unique" terminology clearly demonstrated that the literal wording of the provision only permits the federal prison system to accept the transfer of state prisoners who are to receive "specialized treatment." *Id.* at 646–47. Second, the *Lono* court argued that the legislative history of § 5003(a) also upheld its interpretation. According to the majority, Committee reports clearly reflected that the purpose of the provision was to make available to the states "specialized types of institutions and training programs" maintained by the federal government. The *Lono* opinion also cited a significant portion of the House Judiciary Committee Report stating that the legislation limited the use of federal prisons to state transferees in need of medical care and specialized rehabilitation programs. *Id.* at 647.

There was a strong dissent in *Lono* which maintained three points of contention. On behalf of the minority, Judge Bauer first argued that the literal wording of § 5003(a) establishes only two conditions to federal acceptance of a state transfer: (1) certification that adequate treatment facilities and personnel are available and (2) reimbursement for the care and custody of the transferees. The dissent claimed that since the plain language of the statute in no way limited such transfers to instances where "specialized treatment" was involved, no such requirement should be construed. In the words of the dissenting opinion, "I think that the language of the statute itself is clear and should control any seemingly inconsistent legislative history." *Id.* at 649 (Bauer, J., dissenting). The second minority contention hinged on interpretation of the legislative history itself. The dissent stated that the Committee Reports on which the majority relied simply explained

the need for the legislation, and did not describe actual limitations to be placed on the Bureau of Prisons' discretion under the statute. Finally, Judge Bauer argued that the court should pay deference to the Bureau's administrative interpretation of § 5003(a) which had stood unchallenged for twenty-five years. *Id.*

Cases subsequent to *Lono* have taken the position of the dissent. *Sisbarro v. Warden, Mass. State Penitentiary*, 592 F.2d at 4; *Fletcher v. Warden*, 467 F.Supp. 777, 780–82 (D.Kan.1979); *Bradshaw v. Carlson*, Civil No. 79–544 (M.D.Pa., Aug. 9, 1979). In the instant action, the respondents have asked this Court to adopt these holdings and to reject the position of the Seventh Circuit.[1]

According to the *Lono* dissent, although the legislative history of § 5003(a) indicates that the availability of "specialized treatment" in federal penitentiaries was a main reason for enactment of the legislation, there is no evidence that the transfers pursuant to the provision should be limited to such purposes. Section 5003(a) was passed with little debate in either house of Congress. The main source of legislative history is the House Committee Report which was repeated in substance in the Senate Report. Two sections seem to support the respondents' position. One subsection entitled "Purpose" states that § 5003(a) is designed to authorize the Attorney General to contract for the custody, care, subsistence, education, treatment, and training of state prisoners. No "specialized treatment" requirement is mentioned. [1952] U.S.Code Cong. & Admin.News 1420, 1420. Furthermore, the Committee's "Statement" does not indicate that the transfers must be limited to "specialized treatment" cases. The "Statement" reads:

> State prisons for many years housed and cared for federal prisoners—until the

Federal Government built its own institutions. . . . The committee sees no reason why Federal facilities and personnel should not, in turn, be made available for State offenders, provided, of course, the Federal Government is reimbursed for any expenses involved. *Id.* at 1421.

The *Lono* majority made much of a passage contained under the subheading "Contents of Bill" which, if read in isolation, supports the petitioners:

> The proposed legislation restricts or limits the use of Federal prison facilities to those convicted State offenders who are in need of treatment. The term "treatment" as used in this bill, in addition to its ordinary meaning of providing medical care, is also meant to include corrective and preventive guidance and training as defined in the Youth Corrections Act . . .

This single paragraph, however, cannot be dispositive. In order for it to negate the broad language of the statute and the "Statement" it would have to address the alleged limitation in the "Contents" more specifically and directly. I am sure that in 1951 the federal prisons, in many instances, had specialized institutions not available in most of the states and one of the contemplated benefits was that these institutions, subject to the agreement of the Attorney General, would be accessible to the states. I would be reluctant to conclude, under all the circumstances, that the statute reflects an intent to limit the Attorney General so as to exclude transfers, where, as here, a state cannot house a large number of prisoners. Indeed, it may very well be that the breakdown of the delivery of health care services in the Delaware Correctional Center[2] deprived all inmates, including plaintiffs, of the medical care and treatment which they should normally have available to them.

---

1. Several other cases have made statements indicating that § 5003(a) should be interpreted as broadly as the respondents urge. *See, e. g., U. S. ex rel. Gereau v. Henderson*, 526 F.2d 889, 894 (5th Cir. 1976); *Shakur v. Bell*, 447 F.Supp. 958, 960 (S.D.N.Y.1978).

2. This finding was made by the United States District Court of Delaware in *Anderson v. Redman*, 429 F.Supp. 1105, 1118 (D.C.Del.1977). The court ordered a reduction in prison population because of severely overcrowded conditions and some prisoners, including plaintiffs, were transferred to Lewisburg in order to comply with this ruling.

*Lono* is correct in observing that the drafters of § 5003(a) were mainly interested in providing various types of federal treatment programs to needy state prisoners. The statute, nevertheless, was enacted nearly thirty years ago. To construe its wording today so narrowly as to prevent the transfer of state prisoners to more satisfactory federal facilities in the midst of an emergency would do violence to the language selected by Congress. As *Sisbarro, Fletcher, Bradshaw,* and the *Lono* dissent have noted, § 5003(a) does not contain an explicit requirement that federal penitentiaries only accept state inmate transferees who need sophisticated assistance. This Court declines to read a single paragraph of legislative history so inflexibly as to construct such a condition and prevent the transfer of state prisoners who need every type of treatment, specialized or otherwise. Accordingly, these petitions for habeas corpus shall be denied.