**Isaac COLBETH, Plaintiff,**

v.

**Benjamin CIVILETTI, Attorney General for the United States; Norman Carlson, Director of the United States Bureau of Prisons; W. J. Kenney, Warden, United States Penitentiary, Terre Haute, Indiana; Martin Fitzgerald, Commissioner of Corrections, State of Vermont, Defendants.**

**No. TH 79–178–C.**

United States District Court,
S. D. Indiana,
Terre Haute Division.

July 1, 1980.

---

**8.** *See* footnote 1, *supra.*

Isaac Colbeth, pro se.

Virginia Dill McCarty, U. S. Dist. Atty., Bradley L. Williams, Asst. U. S. Atty., Indianapolis, Ind., Peter M. Nowlan, Asst. Atty. Gen., Dept. of Corrections, Waterbury, Vt., for defendants.

## ENTRY

BROOKS, District Judge.

This matter is before the Court on the Motion of the defendants, Benjamin Civiletti, Norman Carlson, and W. J. Kenney to dismiss, or in the alternative, for Summary Judgment and the defendant, Martin Fitzgerald's, Motion to Dismiss the complaint of Isaac Colbeth. Both parties have filed extensive documents and affidavits in support of their various petitions. The operable facts herein are not in dispute and the motions of the defendants shall be treated pursuant to the provisions of F.R.C.P. 12(b)(6) as a motion for summary judgment in accordance with F.R.C.P. 56.

The Court, having read the complaint with attached additional arguments and issues, the various motions and briefs and the documents submitted by all parties, and being duly advised on the premises now makes its ruling.

The plaintiff is a thirty-three year old inmate of the United States Penitentiary at Terre Haute, Indiana, serving a sentence imposed by the District Court of Vermont, Franklin Circuit, Unit # 3. Plaintiff was transferred to the custody of the United States Bureau of Prisons in accordance with a contract pursuant to 18 U.S.C. § 5003 and dated February 25, 1975.

The complaint asserts numerous causes of action against both the United States and against the State of Vermont premised on violations of 42 U.S.C. § 1983 and requests injunctive and declaratory relief. Plaintiff also seeks class action relief, appointment of counsel, attorney fees and all other applicable relief. The substance of his complaint is that his treatment by the Vermont Parole Board has violated his constitutionally secured right to due process of law under the Fifth and Fourteenth Amendments.

Appended to the complaint are "Additional Arguments" which appear to raise six other claims of constitutional deprivation:

I. Whether plaintiff's federal incarceration is unlawful for failure to comply with the requirements of 18 U.S.C. § 5003.

II. Whether plaintiff's transfer to the federal prison system violates his Sixth Amendment rights to counsel.

III. Whether plaintiff's transfer to the federal prison system violates his rights to equal protection.

IV. Whether plaintiff's transfer out of the State of Vermont constitutes cruel and unusual punishment.

V. Whether plaintiff's constitutionally protected right against double jeopardy has been violated by his having received an institutional disciplinary violation, and a state court criminal conviction, for the same occurrence.

VI. Whether plaintiff's constitutionally protected right against cruel and unusual punishment has been violated for allegedly inadequate medical treatment.

Further, it appears that plaintiff also raises, in his "Additional Argument", a claim of entitlement to immediate discharge from imprisonment, in the nature of a habeas corpus petition.

Defendant, Martin Fitzgerald, Commissioner of Corrections of the State of Vermont points out to the Court that the Vermont Parole Board, an agency separate from the Department of Correction, is invested with exclusive power and authority

regarding parole matters and that, therefore, the complaint fails to state a claim against the defendant, Martin Fitzgerald. This Court agrees.

It follows that the Federal Government, who is merely the custodian, has no authority in the area of parole in the State of Vermont and, therefore, the complaint also fails to state a cause of action against the other defendants, all of which are officers of the United States.

The claims regarding plaintiff's parole treatment are hereby DISMISSED.

Likewise, the defendants have raised the question of exhaustion of state remedies in conjunction with plaintiff's articulated request for "immediate release."  .

In *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the Court held that when a state prisoner challenges the fact or duration of his physical imprisonment and by way of relief seeks a determination that he is entitled to an immediate or speedier release, his sole federal remedy is by way of a writ of habeas corpus. 411 U.S. at 488–89, 93 S.Ct. at 1835–1836.

■    Thus, a state prisoner seeking habeas corpus relief in federal court must proceed pursuant to the terms of 28 U.S.C. § 2254. Subsection (b) of § 2254 provides:

> "An application for writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the state, or that there is either an absence of available state corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner."

In the instant action, plaintiff has made no showing that he has exhausted available state court remedies, nor, that there is an absence of available remedies. Accordingly, if he intended to seek discharge from imprisonment by this action, the claim must be DISMISSED for want of exhaustion.

### CLAIM I.

### PLAINTIFF'S INCARCERATION IS UNLAWFUL FOR FAILURE TO COMPLY WITH THE REQUIREMENTS OF 18 U.S.C. § 5003.

■    Mr. Colbeth's major complaints arise out of his transfer from correctional institutions in the State of Vermont to the custody of the Federal Bureau of Prisons. The record herein indicates that the State of Vermont has no maximum security facility. That the only such facility was closed following the contract entered into between the state and federal governments in 1975. The record reflects that Mr. Colbeth has escaped on three (3) occasions, twice from the St. Albans, Vermont correctional facility. As a result of this propensity, he was considered for out-of-state placement. Mr. Colbeth, at the time of his classification summary at St. Albans Correctional Diagnostic Residential Facility (October 11, 1976) had twenty-one (21) prior convictions and five (5) incarcerations in his thirty-one (31) years of life.

The State of Vermont has had in effect Department of Corrections Policy # 891 which governed out-of-state transfers. The criteria applicable to the instant case are as follows:

> "Criteria for Federal Transfer. A resident may be transferred to a Federal out-of-state facility under the terms of a Federal Agreement, if one or more of the following criteria for transfer are met.
>
> 1.  All in-state treatment and rehabilitative programs available for that individual have been considered and determined unsuitable.
>
> 2.  All in-state alternatives in the area of security have been considered and found unsuitable for providing the required degree of security or protective custody for a particular resident."

In accordance with the requirements of Policy # 891, a hearing was held on October 28, 1978 before a hearing officer at the St. Albans facility at which time plaintiff was represented by a lay counsel and had witnesses present on his own behalf. The

facility presented seven (7) items in support of their request to transfer. They were:

"1.  You have been afforded programs at community-based treatment facilities at St. Albans CDTF and St. Johnsbury CCC which have resulted in further criminal offenses. You are not eligible for placement at the Vermont State Hospital. You are not eligible for placement at the Residential Treatment Facility at Windsor; thus exhausting all in-state treatment alternatives.

2.  You have recently begun to serve a long minimum sentence of 7–10, 18 months—8 years, 18 months 5 years, 3 years—4 years, precluding placement in a community-based facility.

3.  You have demonstrated that you are a potentially dangerous person; to-wit, convictions of aggravated assault and attempted rape precluding placement in a community-based facility.

4.  You have a medical problem which requires more extensive treatment that can be afforded in house at St. Albans CDTF or any community-based facility.

5.  You have had a previous hearing which was held on July 16, 1975 in which the Hearing Officer recommended that you go out of state.

6.  You are an escape risk based on three convictions for escape; to-wit; July, 1972, June, 1975 and May, 1976, which precludes placement in a community-based facility.

7.  You were the intended receiver of a television set which contained two handguns while at St. Albans CDTF indicating you need long term maximum security supervision."

Following the submission of evidence the hearing officer upheld the proposed out-of-state placement setting out his reasons as follows:

"Criteria # 1 of Policy Bulletin .891 has been met in that programming has been attempted at the St. Albans Facility and at the St. Johnsbury Correctional Center and has failed. Mr. Colbeth is not· a candidate for Waterbury State Hospital and does not meet qualifications for the Residential Treatment Facility at Windsor.

"Criteria # 2 of Policy Bulletin 891 has been met in that Mr. Colbeth has escaped on three occasions, one of them involving assaultive behavior during the escape.

"Mr. Colbeth plans to stay in St. Albans and stay within the facility could not be worked and the program at St. Albans is not designed to house an inmate inhouse over a period of five years."

Plaintiff was subsequently transferred to the custody of the United States Bureau of Prisons and, in due course, arrived at the United States Penitentiary at Terre Haute, Indiana, from whence he filed this action.

Plaintiff has mounted an attack upon the legality of his transfer to federal custody pursuant to § 5003 citing the authority of *Lono v. Fenton*, 581 F.2d 645 (7th Cir. 1978) which held:

"... the statute on its face authorizes transfers only when proper and adequate treatment facilities and personnel are available, it necessarily follows that the only authorized purpose for any transfer is the provision of specialized treatment."

This view of the applicable statute, § 5003, appears to be a minority one among the Circuits. *U. S. ex rel. Gereau v. Henderson*, 526 F.2d 889 (5th Cir. 1976); *Shakur v. Bell*, 447 F.Supp. 958 (S.D.N.Y.1978); *Fletcher v. Warden*, 467 F.Supp. 777 (D.Kan.1979); *Sisbarro v. Warden*, 592 F.2d 1 (1st Cir. 1979).

In *Sisbarro v. Warden, supra*, the Court explicitly rejected *Lono's* "closely divided" opinion, apparently because it read § 5003 as reposing discretion in prison officials which is not ordinarily the subject of judicial review:

"This provision (§ 5003) 'merely authorized the federal government to make arrangements with a state whereby a state's prisoners may be confined when the state feels that either it or the prisoner may benefit from the arrangement.' " (Citation omitted) 592 F.2d at 4.

The same result was reached in *Fletcher v. Warden, supra,*

"We fully agree with Judge Bauer that 'There is simply nothing in the language of the statute itself that "restricts or limits the use of Federal prison facilities to those convicted State offenders who are in need of treatment".' The statute merely authorized federal officials to contract with the states 'for the custody, care subsistence, education, treatment and training' of state prisoners... Thus we conclude that there is no support for petitioner's claim that § 5003 transfers are restricted to prisoners needing special treatment." 487 F.Supp. at 781.

In *Gomes v. Moran*, 468 F.Supp. 542 (D.C. R.I.1979), the Court, following the *Sisbarro* holding that neither the language of the statute nor the administrative interpretation given it by the Bureau of Prisons suggests a substantive limitation or restriction on the purposes for which prisoners may be transferred, held no due process interest is created by the federal statute.

In a consolidated memorandum and order of the cases of *Bowers v. Fenton*, and *Brown v. Fenton*, 488 F.Supp. 570 (M.D.Pa., 1979), Chief Judge Nealon held:

"As *Sisbarro, Fletcher, Bradshaw*, and the *Lono* dissent have noted, § 5003(a) does not contain an explicit requirement that federal penitentiaries only accept state inmate transferees who need sophisticated assistance. This Court declines to read a single paragraph of legislative history so inflexibly as to construct such a condition and prevent the transfer of state prisoners who need every type of treatment, specialized or otherwise." *Bowers* at 574.

In *Howe v. Civiletti*, 480 F.Supp. 111 (D.C.Vt., 1979), the Court held.

"[N]otwithstanding any indication from the legislative history of the act to the contrary, that the act plainly and unambiguously requires no showing of specialized treatment needs of facilities before a Vermont state prisoner may be transferred to the federal prison system in accordance with the contract under which

Howe was so transferred. In contracting with State officials, 18 U.S.C. § 5003(a) requires nothing more of the Director of the Bureau of Prisons than a certification that facilities exist within the federal system in which state prisoners may be accommodated." (Citation omitted.) *Howe* at 114–115.

Although this Court finds the above case law quite persuasive the Court is bound by the *Lono* decision.

However, so bound, we find that the instant case is distinguishable on its facts from *Lono*. Herein the State of Vermont has no maximum security facility to house inmates with Mr. Colbeth's proclivities; nor are they able to provide necessary medical treatment on an "in facility" basis. Plaintiff had declined participation in the available programs in Vermont and had demonstrated a violent nature which precluded his continued incarceration in a minimum security environment. The only available specialized treatment facilities were those of the United States with which the State of Vermont had an existing contract. Applying the law to the facts herein, the Court finds that the defendants did comply with the provisions of 18 U.S.C. § 5003 as interpreted by the Seventh Circuit in *Lono, supra*.

Under the facts of this action we further find that plaintiff's transfer under § 5003 does not place the federal government in the "rent a prison business" but was made necessary because of the needed specialized treatment facilities unavailable in the State of Vermont.

■ The plaintiff herein has received his due process hearing. The administrative hearing procedures embodied in departmental Policy # 891 and the discretionary authority vested in the commissioner pursuant to 28 V.S.A. § 706(a) which reads as follows:

"(a) The commissioner may enter into and execute a contract or contracts with the United States for the transfer of any inmate from any facility to a federal correctional facility when, in his opinion, the inmate needs particular treatment or

special facilities available at the federal correctional facility; or, all in-state treatment and rehabilitative programs available for the in-state security and custody alternatives for the inmate have been considered and found unsuitable; or, the inmate voluntarily requests transfer." are sufficient as a matter of law to satisfy any pre-transfer determination requirement.

Significantly, the administrative procedure for out-of-state transfer in general and Policy # 891 in particular, both of which were applied in plaintiff's cases, are procedures established almost exclusively as a result of suggestions and guidance the Department of Corrections received from the United States District Court in Vermont.

In *Battick v. Stoneman*, 421 F.Supp. 213 (D.Vt.1976), the Court, in upholding the federal transfer of a Vermont prisoner in accordance with the procedures set out in Policy # 891, ruled ". . . that the transfer of the plaintiff Battick to the custody of the United States Bureau of Prisons, pursuant to the provisions of 28 V.S.A. § 706, does not offend the Constitution of the United States." 421 F.Supp. at 231. Earlier in that opinion the *Battick* Court discussed the historical development of Policy # 891, and noted that the policy's format evolved from judicial suggestion and guidance:

"These guidelines are consistent with judicial suggestions made in *Bousley & Messier v. Smith*, Civ. No. 6679 (D.Vt., June 11, 1973) concerning appropriate criteria for out-of-state transfer and are in keeping with the dictates of 28 V.S.A. § 706 as amended.

"The administrative procedure established for making the decision on transfer of an inmate out of state was designed to conform with the guidance indicated in *Carlson v. Moeykens*, Civ. No. 74–224 (D.Vt., Jan. 24, 1975, amended Mar. 13, 1975)." 421 F.Supp. at 216–217.

These administrative procedures were followed in the department's decision to transfer plaintiff to the Federal Bureau of Prisons.

Plaintiff was transferred to the federal system only after a finding that both criteria # 1,

"All in-state treatment and rehabilitative programs available for that individual have been considered and determined unsuitable."

and criteria # 2,

"All in-state alternatives in the area of security have been considered and found unsuitable for providing the required degree of security or protective custody for a particular individual."

of Vermont Department of Correctional Policy # 891 had been met. Accordingly, after administrative hearing procedures, plaintiff was found to require treatment and security not available within Vermont's correctional system. The pre-transfer procedures more than satisfy any pre-transfer determination required by the *Lono* Court. Defendants have complied with the requirements of 18 U.S.C. § 5003 as applicable to the fact situation herein.

### CLAIM II.

**PLAINTIFF'S TRANSFER TO THE FEDERAL BUREAU OF PRISONS FOR SERVICE OF HIS STATE SENTENCE DOES NOT VIOLATE HIS SIXTH AMENDMENT RIGHT OF MEANINGFUL ACCESS TO THE COURTS.**

■ The United States Supreme Court, in *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) held:

"[T]hat the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or* adequate assistance from persons trained in the law." (Emphasis added.) 430 U.S. at 828, 97 S.Ct. at 1498.

The question of whether the transfer of a Vermont State prisoner to the Federal Bureau of Prisons was recently examined by the United States District Court for the

District of Vermont. In *Hohman v. Hogan*, 458 F.Supp. 669 (D.Vt.1978), the plaintiff, a Vermont State prisoner in federal custody at the United States Penitentiary in Marion, Illinois, raised access to counsel claims identical to those brought by this plaintiff. In *Hohman*, the Court held that the *Bounds* requirement was clearly in the disjunctive; the State must provide either adequate law libraries or assistance of persons trained in the law. The Court examined Vermont's statutory scheme which provides a Public Defender's System for needy criminal defendants and for persons in the custody of the Commissioner of Corrections. 13 V.S.A. §§ 5201 *et seq.* The Court held that:

"The operation of the Public Defender's System serves well to preserve the plaintiff's access to the Courts." *Hohman, supra*, at 673.

The statutory obligation of Vermont's Defender General to provide legal representation to plaintiff satisfied his constitutional right of access to the Courts. Additionally, as the *Hohman* Court recognized, prisoners may also avail themselves of the legal research assistance and services provided by the Vermont Department of Libraries should they choose not to utilize the assistance available to them from the Vermont Defender General.

In *Battick v. Stoneman*, 421 F.Supp. 213 (D.Vt.1976), the Court recognized that a Vermont prisoner transferred to the federal system suffered personal disadvantages, including reduced access to the Vermont Defender General. The reduced access, however, was not found to rise to the level of a constitutional violation. Similar was the holding in *Rebideau v. Stoneman*, 398 F.Supp. 805 (D.Vt.1975).

"Despite the impairment to visitation of family and friends and the difficulties of access to Vermont counsel, these problems are not constitutional barriers to the operation of the statutory design (transfer to the federal prison system)." *Supra*, at 814.

Accordingly, while plaintiff's incarceration at the United States Penitentiary at Terre Haute, Indiana, may cause some difficulties in the access to trained legal counsel available to him, that difficulty does not rise to constitutional proportions and, therefore, fails to state a claim and is dismissed.

## CLAIM III.

### PLAINTIFF'S TRANSFER TO THE FEDERAL BUREAU OF PRISONS FOR SERVICE OF HIS STATE SENTENCE DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT.

■ Coalesced with plaintiff's claimed deprivation of his Sixth Amendment rights, addressed above, is a claim that his transfer to the Federal Bureau of Prisons for service of a state sentence is violative of the Equal Protection Clause of the Fourteenth Amendment.

28 V.S.A. § 706(b) provides as follows: "Notwithstanding any other provision of law, an inmate transferred to a federal correctional facility shall, unless otherwise agreed in a contract or contracts, be subject to the same law, rules, regulations, and procedures applicable to inmates committed for violations of laws of the United States, not inconsistent with the sentence imposed. Such laws, rules, regulations, and procedures applicable to Vermont prisoners confined outside Vermont may include but are not limited to matters of discipline, classification, segregation, visiting, mail, clothing or dress, use of telephones, personal property, employment, work release, furlough and transfer."

It has been examined by the courts and found to pass constitutional muster. *Battick v. Stoneman, supra; Rebideau v. Stoneman, supra.*

In *Rebideau*, the Court specifically addressed equal protection claims similar to the one raised in the instant case. The Court found that the statute granted the Commissioner of Corrections authority to create two classes of prisoners; those that could be adequately programmed and safely housed within the state, and those who could not and, therefore, were transferred

to federal facilities. Applying the traditional equal protection test that only a showing of some rational connection between the statute under attack and a legitimate state purpose is required, the Court held:

[T]he classification created by section 706(b) are not patently arbitrary and bear a rational relationship to a legitimate governmental interest. The state has a valid governmental concern, in the interest of public safety, and the welfare of prisoners committed to its custody, to maintain 'security, safety and order at the correctional facilities ...'" *Rebideau, supra*, at 812.

In so holding, the Court found that there was no guarantee that a person lawfully convicted has a constitutional right to be confined in a particular state where his sentence was imposed.

Accordingly, plaintiff's equal protection, claim, which is grounded on a diminished opportunity for family visitation, does not rise to the level of a constitutional deprivation and, therefore, is dismissed.

## CLAIM IV.

### PLAINTIFF'S TRANSFER TO THE FEDERAL BUREAU OF PRISONS FOR SERVICE OF A STATE SENTENCE DOES NOT CONSTITUTE CRUEL AND UNUSUAL PUNISHMENT.

As with his Sixth Amendment and Fourteenth Amendment Equal Protection claims, plaintiff's Eighth Amendment claim has also been previously raised by Vermont State prisoners transferred to the federal prison system.

It should first be recognized that plaintiff's transfer to the federal prison system is not punitive in nature: The transfer was made for treatment and security reasons. As the three-judge panel in *Rebideau, supra*, held:

"To the extent that 28 V.S.A. § 706(b) engrafts variant federal treatment and prison procedures on inmates transferred to federal custody, none have been shown to offend rights which are constitutionally protected." *Supra*, at 814.

Further, plaintiff in *Battick, supra*, specifically raised Eighth Amendment claims in his transfer litigation. Viewing plaintiff's Eighth Amendment claims in light of evolving standards of decency that mark the progress of a maturing society, the *Battick* Court held:

"The transfer of the plaintiff Battick to the custody of the United States Bureau of Prisons, pursuant to the provisions of 28 V.S.A. § 706, does not offend the Constitution of the United States." *Supra*, at 231.

Enroute to that holding, the Court stated:

"The Vermont General Assembly substantially revised the state's correctional system and added new provisions to implement and develop new programs in keeping with the purpose stated in the enactment. 1971 No. 199 (Adj. Sess.) effective July 1, 1972. The enactment was designed to respond to the needs of the prisoners as well as those of the state, resulting from the closing of the maximum security facility and the transfer of some of its residents to federal correctional institutions. 28 V.S.A. § 706. See *Rebideau v. Stoneman*, 398 F.Supp. at 808–809. There is nothing about this solution of the state's correctional need for providing maximum security protection for certain of its prisoners '. . . that justifies a finding that involuntary out-of-state transfer of a convicted prisoner is either cruel or unusual punishment.' *Hoitt v. Vitek*, 361 F.Supp. 1238, 1251 (D.N.H.1973) aff'd 497 F.2d 598 (1st Cir. 1974). And while the plaintiff's transfer is not to his liking and has some adverse consequences which attend any distant transfer, his medical care has been continuing and his physical condition is not impaired; indeed, it has improved. On the facts presented his transfer does not offend the Eighth Amendment. *Supra*, at 230.

There is no guarantee that a person lawfully convicted has a constitutional right to be confined in a particular institution or in a particular state where his sentence was

imposed. *Rebideau, supra,* at 814. Transfer of a state prisoner to the federal prison system does not violate the Eighth Amendment prohibition against cruel and unusual punishment. Accordingly, plaintiff has stated no Eighth Amendment claim upon which relief can be granted.

## CLAIM V.

### DOUBLE JEOPARDY CLAIM

■ Plaintiff asserts that the administrative punishment he received for escape, loss of reductions in term for good behavior, renders a subsequent criminal prosecution and conviction for the escape violative of the Fifth Amendment prohibition against double jeopardy.

In *United States v. Hedges,* 458 F.2d 188 (10th Cir. 1972), the plaintiff raised a similar claim after administrative forfeiture of 543 days of good behavior time and a subsequent prosecution for attempted escape. On his appeal from the criminal conviction, the United States Court of Appeals for the Tenth Circuit stated:

"It is established in this circuit that administrative punishment does not render a subsequent judicial prosecution violative of the Fifth Amendment prohibition of double jeopardy. *Hutchinson v. United States,* 450 F.2d 930, 931 (10th Cir. 1971). The double jeopardy clause of the Fifth Amendment was thus not violated here." (Footnote omitted.) *Hedges, supra,* at 190.

The United States Court of Appeals for the Fifth Circuit reached the same result in *United States v. Bryant,* 563 F.2d 1227 (5th Cir. 1977), cert. denied 435 U.S. 972, 98 S.Ct. 1616, 56 L.Ed.2d 65 (1978). Citing *United States v. Lepiscopo,* 429 F.2d 258, 261 (5th Cir. 1970), cert. denied 400 U.S. 948, 91 S.Ct. 255, 27 L.Ed.2d 254 (1970); and *United States v. Herrera,* 504 F.2d 859, 860 (5th Cir. 1974), the Court held:

"The good time defendants had earned in prison was revoked administratively after their participation in the riot. They now contend that their prosecution in this case for the same acts constitutes double jeop-

ardy. We do not agree. The revocation of good time in an administrative proceeding by prison officials does not preclude prosecution for a substantive offense on the same acts." *Bryant, supra,* at 1230.

Administrative revocation by prison officials of good behavior credits does not preclude the criminal prosecution of a substantive offense arising out of the same act. Accordingly, plaintiff fails to state a double jeopardy claim upon which relief can be granted.

## CLAIM VI.

### PLAINTIFF'S MEDICAL CLAIMS DO NOT RISE TO THE LEVEL OF A CONSTITUTIONAL DEPRIVATION.

■ Mr. Colbeth suffers from a prolapsed mitral heart valve which, at the present time, does not require surgery. The record herein reflects that the consultant physicians at the Terre Haute facility have monitored Colbeth's condition since his return there from Springfield, Missouri. In August, 1979, his medical records were sent to the Springfield, Missouri Medical Center for a recommendation on proposed coronary arteriography. The cardiac consultant and the chief of medicine at the Medical Center concurred that there seemed to be no need for the procedure at the present time, as plaintiff showed no sign of congestive heart failure. (Memorandum, August 14, 1979 from G. A. Ralston, Warden, United States Medical Center.)

In his complaint, Colbeth claims that he is being deprived of necessary specialized treatment for his heart condition, which treatment he contends he is "in dire need of." He argues that he is not receiving the treatment required for transferee prisoners. He reasons that, therefore, he should be returned to a Vermont correctional facility, since he is allegedly not receiving what he believes is the appropriate medical treatment for his heart condition. Since Mr. Colbeth lacks any medical expertise and since the record reflects a continued monitoring of plaintiff's condition, the Court

places little credence in plaintiff's claims. Plaintiff asserts that his medical treatment is violative of 42 U.S.C. § 1983.

A § 1983 claim for denial of adequate medical care will be dismissed if it does not allege such denial as to constitute cruel and unusual punishment. *Martinez v. Mancusi*, 443 F.2d 921 (2nd Cir. 1970), cert. denied, 401 U.S. 983, 91 S.Ct. 1202, 28 L.Ed.2d 335.

In *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Court concluded that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle, supra*, 429 U.S. at 104, 97 S.Ct. at 291. In so holding, however, the Court stated that:

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle, supra*, 429 U.S. at 106, 97 S.Ct. at 292.

The complaint is devoid of allegations of acts or omissions "sufficiently harmful to evidence deliberate indifference to serious medical needs." Plaintiff, therefore, does not meet the requirements established by *Estelle* necessary to state a cognizable claim.

## CONCLUSION

Because of the unique nature of the prison environment, courts have developed special rules with respect to them. We have held that prisoners do not enjoy the full panoply of rights accorded the general citizenry by virtue of their incarceration. Indeed, the exigencies of imprisonment for violation of law demand the suspension of rights and privileges normally enjoyed by a law-abiding citizen:

"Of course, as we have indicated, the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974).

The withdrawal of rights normally accorded the public is considered a necessary incident to prison life:

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974).

See, *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948) ("a retraction justified by the considerations underlying our penal system."); *Gittlemacker v. Prasse*, 428 F.2d 1, 3 (3rd Cir. 1970) ("the denial of his right to drink fully from the cup of freedom is the very hypostasis of confinement.").

Thus, the Supreme Court of the United States has consistently held that federal courts "sit not to supervise prisons but to enforce the constitutional rights of all 'persons,' including prisoners." *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972). In *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), the Court reaffirmed this principle when it denied the right to due process for prison transfers even if the transfers cause a "substantial deprivation" to inmates:

"[T]o hold as we are urged to do that *any* substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Supra*, at 225, 96 S.Ct. at 2538.

A review of the record herein and the law applicable thereto convinces this Court that there is no merit to any of plaintiff's allegations.

Accordingly, the Court finds that there is no genuine issue of material fact in dispute

herein and that the law is with the defendants, and each of them, and against the plaintiff, Isaac Colbeth, and that summary judgment against the plaintiff is appropriate herein, and the Court now finds against the plaintiff on his complaint and orders the same DISMISSED with prejudice and enters judgment according to the above entry.

Since the Court has dismissed this action, the request for class action relief, appointment of counsel, and motion for production of documents are moot.