708 F.2d 1241
 William CORGAIN, Petitioner-Appellant,
v.
H.G. MILLER and Norman Carlson, Respondents-Appellees.
Joe ORTEGA, Petitioner-Appellant,
v.
H.G. MILLER, Warden and Norman Carlson, Respondents-Appellees.
Arthur ST. PETER, Petitioner-Appellant,
v.
H.G. MILLER, Warden, Respondent-Appellee.
Kenneth Duane AGTUCA, Petitioner-Appellant,
v.
Harold G. MILLER, Respondent-Appellee.
Anthony J. SOUZA, Petitioner-Appellant,
v.
Harold MILLER, Warden, Respondent-Appellee.
Ronald Orville PIERCY, Petitioner-Appellant,
v.
Harold G. MILLER, Respondent-Appellee.
Albert LITTLE, Petitioner-Appellant,
v.
Harold G. MILLER, Warden, Respondent-Appellee.
Lester M. Askofu JOHNSON, Plaintiff-Appellant,
v.
H.G. MILLER, Defendant-Appellee.
 Nos. 81-2967, 81-2990, 81-2996, 81-3009, 82-1157, 82-1447,
81-2965 and 82-1023.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 10, 1982.
Decided May 27, 1983.
As Amended June 22 and July 19, 1983.
Rehearing and Rehearing En Banc Denied Aug. 4, 1983.
 
 Allen E. Sheenburger, Associate Prof. of Law, Carmen D. Caruso (Law Student) Loyola University Law School, Chicago, Ill., for petitioners-appellants.
 Richard H. Lloyd, Asst. U.S. Atty., East St. Louis, Ill., for respondents-appellees.
 Before WOOD and ESCHBACH, Circuit Judges, and BARTELS, Senior District Judge.*
 ESCHBACH, Circuit Judge.
 
 
 1
 The appellants are prisoners convicted in state courts of state offenses who were transferred into federal custody pursuant to contracts between the various states and the Attorney General of the United States, as authorized by 18 U.S.C. Sec. 5003. The appellants petitioned for writs of habeas corpus, contending that they are deprived of adequate access to state courts because the library services available to them in the United States Penitentiary ("USP") at Marion, Illinois are deficient in state law materials. Some of the appellants also contend that due process was violated when they were transferred from state to federal custody without adequate procedural safeguards. The court below found the existing library system inadequate and ordered the prison officials to submit plans to provide adequate state law services. After approving the submitted plans, the court entered judgment against the appellants on both issues. For the reasons below, we affirm on the issue of access to state courts, and we vacate and remand for further proceedings on the due process issue.
 
 
 2
 * William Corgain was transferred from Walpole State Prison in Massachusetts to USP-Lewisburg, Pennsylvania in September 1980. Neither the state nor the federal authorities provided a hearing before this transfer. In October 1980, he was transferred to USP-Marion, Illinois, after being classified as a security risk. Sometime prior to May 16, 1981, he was transferred to USP-Leavenworth, Kansas.
 
 
 3
 Kenneth Agtuca was transferred from Washington State Penitentiary to USP-Marion after pleading guilty to attempted escape before a prison administrative hearing. There was no hearing on the issue of transfer, however. He was transferred to USP-Atlanta, Georgia in March 1979, and then transferred back to USP-Marion in September 1979.
 
 
 4
 Joe Ortega was transferred from the Washington State Prison at Walla Walla into federal custody in October 1979. In November 1979, he entered the Federal Corrections Institute at El Reno, Oklahoma. He has since been transferred to USP-Marion in July 1980, and from there, to USP-Lewisburg, Pennsylvania sometime prior to December 11, 1981.
 
 
 5
 Anthony Souza was transferred without a hearing from a Rhode Island facility to USP-Marion in September 1978. Sometime prior to January 29, 1982, he was returned to state custody.
 
 
 6
 Ronald Piercy was transferred from a Washington facility to USP-Marion in January 1981.
 
 
 7
 Arthur St. Peter is a Washington state prisoner who entered federal custody in October 1979. He arrived at USP-Marion in December 1979.
 
 
 8
 Albert Little was transferred from a Massachusetts facility to USP-Lewisburg, Pennsylvania in September 1980. He was then transferred to USP-Marion in October 1980.
 
 
 9
 Askofu Johnson is a Delaware state prisoner presently in federal custody at USP-Marion.
 
 
 10
 The habeas petitions of Corgain, Agtuca, Ortega, Souza, Piercy, St. Peter and Little were filed individually, but were consolidated below, along with three other cases, because of the similarity of the issues raised. The consolidated cases were referred to a magistrate by consent of the parties.
 
 
 11
 The magistrate found that the library services available at USP-Marion were inadequate to provide the petitioners with meaningful access to their state courts and ordered the prison to submit to the court a written plan for each state then housing prisoners at USP-Marion which would provide the prisoners with meaningful access to the courts which imposed the sentences that the prisoners were serving.[1] The submitted plans did not provide for increased state law materials for the library, but instead provided the prisoners with lists of legal aid resources from the states. With the exception of the Rhode Island plan, the magistrate approved these plans as adequate. The prison was obliged to submit a revised plan for Rhode Island, which was then also approved.
 
 
 12
 The magistrate deferred decision of the transfer issue until the Supreme Court decided Howe v. Smith, 452 U.S. 473, 101 S.Ct. 2468, 69 L.Ed.2d 171 (1981), which the magistrate believed would be dispositive of the issue. After the Supreme Court decided Howe, the magistrate issued an order denying habeas relief on the transfer issue and judgment was entered against the petitioners on all issues. The petitioners appeal.
 
 
 13
 Appellant Askofu Johnson filed his petition for a writ of habeas corpus after the above consolidated cases had been decided. He raised only the issue of inadequate library resources. The court denied his motion to proceed in forma pauperis, declaring that Johnson's claim was moot because the relief he sought had already been provided under the Delaware plan submitted by the prison in the consolidated cases. Johnson appeals.
 
 
 14
 All eight cases were consolidated on appeal because of the similarity of the issues they present.[2] Although not all of the appellants participated in oral arguments, we extend the benefits of counsel's argument to all appellants.
 
 II
 
 15
 Two major issues are raised on appeal. First, all appellants contend that they are being deprived of their constitutional right of access to their state courts by the lack of adequate state law materials in the law library at USP-Marion. Second, Corgain, Agtuca and Souza argue that they were deprived of due process in being transferred from state to federal custody without notice and a hearing.[3] Johnson additionally argues that the court below erred in declaring his case moot and refusing to allow him to proceed in forma pauperis.
 
 
 16
 The appellees claim that the constitutional issue of due process is not properly before the court because the appellants made only a statutory challenge to their transfers in the court below.
 
 
 17
 In addition to these issues, we sua sponte consider whether the transfers of Corgain, Ortega and Souza from USP-Marion to facilities outside this circuit divest this court of jurisdiction or render any of their claims moot.
 
 III
 A. Jurisdiction and Mootness
 
 18
 Since filing their petitions, Corgain, Ortega and Souza have been transferred from USP-Marion. Corgain and Ortega remain in federal custody, while Souza is back in the custody of Rhode Island. All three are outside of the district in which they filed their petitions and outside of this circuit.
 
 
 19
 Rule 23 of the Federal Rules of Appellate Procedure provides that a person having custody of a prisoner whose habeas corpus petition is pending review shall not transfer custody to another unless the transfer is directed in accordance with the provisions of the rule. There is nothing in the records of the three transferred appellants indicating that the provisions of Rule 23 were followed.[4] Since the transfers were in violation of Rule 23, this court is not divested of subject matter jurisdiction. United States ex rel. McInery v. Shelly, 702 F.2d 101 (7th Cir.1982); Cohen v. United States, 593 F.2d 766, 767 n. 2 (6th Cir.1979); Hudson v. Hardy, 424 F.2d 854, 856 n. 5 (D.C.Cir.1970); see Ahrens v. Clark, 335 U.S. 188, 193, 68 S.Ct. 1443, 1445, 92 L.Ed. 1898 (1948).
 
 
 20
 Although the transfers from USP-Marion have not divested this court of jurisdiction, we must separately consider whether the transfers have mooted any of the appellants' claims. See Hudson v. Hardy, supra, 424 F.2d at 856 n. 5. Corgain, Ortega and Souza contend that their right of access to their state courts is impaired by inadequate library services at USP-Marion. None of the three are now at that facility. As a general rule, when a habeas petitioner protests a condition of his confinement, his claim is mooted when that condition ends. See Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975); Weeks v. Wyrick, 638 F.2d 690, 693 (8th Cir.1981); Cervantes v. Walker, 589 F.2d 424, 425-26 (9th Cir.1978); Ross v. Mebane, 536 F.2d 1199, 1201 (7th Cir.1976); Lewis v. D.C. Department of Corrections, 533 F.2d 710, 711 (D.C.Cir.1976). The exception to this general rule for issues that are "capable of repetition, yet evading review" applies only when "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." Weinstein v. Bradford, supra, 423 U.S. at 149, 96 S.Ct. at 348. The cases of Corgain, Ortega and Souza, as non-class actions, satisfy neither of these requirements. While these particular petitioners did not remain at USP-Marion long enough to complete their challenge to the library system, there is no suggestion that other prisoners from their respective states will not be housed at USP-Marion long enough to do so. In this case, in fact, there is another appellant from Corgain's state of Massachusetts (Little) and other appellants from Ortega's state of Washington (Agtuca, Piercy, and St. Peter) challenging the library system. Moreover, there is no reasonable expectation that Corgain, Ortega, or Souza will be subjected to the allegedly inadequate library system at USP-Marion again.[5] Accordingly, we hold that their challenges to the library system at USP-Marion are not "capable of repetition, yet evading review," and are therefore moot. See id.; Fletcher v. Warden, 641 F.2d 850, 852 (10th Cir.), cert. denied, 453 U.S. 912, 101 S.Ct. 3145, 69 L.Ed.2d 995 (1981); Weeks v. Wyrick, supra, 638 F.2d at 693; Cervantes v. Walker, supra, 589 F.2d at 425-26.
 
 
 21
 Corgain and Souza contend that their transfers from state to federal custody without procedural safeguards violated their due process rights. Corgain remains in federal custody; therefore, his due process claim is not moot. Souza, however, has been returned to the custody of Rhode Island. Since his was not a class action suit and since there is no reasonable expectation that the alleged wrongful transfer to federal custody will recur[6] or that the transfer issue is one that will evade review, Souza's appeal on the due process issue is moot. See Fletcher v. Warden, supra, 641 F.2d at 852.
 
 
 22
 In conclusion, we hold that we retain subject matter jurisdiction over the appeals of Corgain, Ortega and Souza. However, their challenges to the library system at USP-Marion is rendered moot by their transfers from that prison. Additionally, Souza's due process claim is rendered moot by his transfer back to Rhode Island. Since both of Souza's claims are moot and Ortega's only claim is moot, we remand those cases with instructions that they be dismissed.
 
 
 23
 We turn now to the question of whether Johnson's challenge to the library system was moot from its inception. Johnson brought his habeas petition after the consolidated cases had been decided, alleging that he was being denied adequate access to Delaware state courts because of the absence of Delaware law books in the law library at USP-Marion. The magistrate who had earlier decided the consolidated cases denied Johnson's motion to proceed in forma pauperis, reasoning that the Delaware plan approved in the consolidated cases rendered Johnson's claim moot.
 
 
 24
 A court may refuse to authorize a habeas petitioner to proceed in forma pauperis if his action is frivolous. See 28 U.S.C. Sec. 1915(d); McGarrity v. Wilson, 368 F.2d 677, 678 (9th Cir.1966). In this context, an action is frivolous only if the petitioner can make no rational argument in law or facts to support his claim for relief. Pembrook v. Wilson, 370 F.2d 37, 39 (9th Cir.1966); Ragan v. Cox, 305 F.2d 58, 60 (10th Cir.1962); cf. Coppedge v. United States, 369 U.S. 438, 448, 82 S.Ct. 917, 922, 8 L.Ed.2d 21 (1962) (criminal appeal). We believe a moot claim would be frivolous, and Johnson's claim would be moot if he had already received everything he had asked for, see Shimabuku v. Britton, 503 F.2d 38, 44 (10th Cir.1974). However, since Johnson was protesting that the Delaware plan was inadequate and was asking for the addition of Delaware law books to the prison library, we cannot agree with the court below that Johnson's claim was moot. Neither can we conclude that his claim was otherwise frivolous. Johnson was not a party in the consolidated cases in which the Delaware plan was approved, hence that judgment is not res judicata for his action.[7] Additionally, it appears from his brief that he wishes to attack the Delaware plan both on its face and as implemented. The latter claim was not considered in the consolidated cases. Because we conclude that Johnson's claim is not moot or otherwise frivolous, we reverse the magistrate's denial of leave to proceed in forma pauperis, and remand for further proceedings. Although the magistrate may find his prior approval of the plan on its face persuasive, and although the attack on the plan as implemented may ultimately prove unmeritorious, Johnson must be afforded the opportunity to pursue his claim.
 
 B. Access to Courts
 
 25
 It is indisputably established that prisoners have a fundamental, constitutional right of access to the courts. See Bounds v. Smith, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977); Procunier v. Martinez, 416 U.S. 396, 419, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974); Johnson v. Avery, 393 U.S. 483, 485, 89 S.Ct. 747, 748, 21 L.Ed.2d 718 (1969); Adams v. Carlson, 488 F.2d 619, 630 (7th Cir.1973). Access must be adequate, effective, and meaningful. Bounds v. Smith, supra, 430 U.S. at 822, 97 S.Ct. at 1495; Rush v. United States, 559 F.2d 455, 458 (7th Cir.1977). Without this right, all other rights a prisoner may possess are illusory. Adams v. Carlson, supra, 488 F.2d at 630.
 
 
 26
 Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), is the Supreme Court's most thorough analysis of the right of access to the courts as it relates to the adequacy of prison law libraries. In that case, the Court held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828, 97 S.Ct. at 1498 (footnote omitted). The Court further stated that "while adequate law libraries are one constitutionally acceptable method to assure meaningful access to the courts, our decision here ... does not foreclose alternative means to achieve that goal." Id. at 830, 97 S.Ct. at 1499. After discussing some possible alternatives to law libraries, the Court explained that "a legal access program need not include any particular element we have discussed, and we encourage local experimentation. Any plan, however, must be evaluated as a whole to ascertain its compliance with constitutional standards." Id. at 832, 97 S.Ct. at 1500 (footnote omitted).
 
 
 27
 The magistrate found that, at the time the consolidated cases were filed, the prison law library at USP-Marion contained no statutes, digests, or cases from any state, save a copy of the Alaska statutes. Inmates could receive photocopies of materials not found at the prison library through the Shawnee Library System in Carterville, Illinois. Any expenses incurred were paid by USP-Marion. The prisoner, however, had to provide an exact citation to the materials he desired. The magistrate also found that all of the petitioners had filed or intended to file pleadings in courts which imposed the sentences they are serving to collaterally attack their convictions, and that some of the petitioners also had filed or anticipated filing various civil actions in state court. The magistrate concluded that the library system at USP-Marion was inadequate to provide the petitioners with meaningful access to the courts which imposed their sentences because the petitioners had no way of finding citations to the state law materials they needed in order to take advantage of the Shawnee Library System copying service. The magistrate suggested that the petitioners needed "starter volumes," such as state digests, to allow them to take advantage of all the services at USP-Marion, or the provision of legal assistance that would serve the same purpose. USP-Marion was ordered to submit a written plan for each state currently housing prisoners there, detailing the provisions to be made to assure that the prisoners would have meaningful access to the courts that imposed their sentences. All the plans were eventually approved. On appeal, Little, from Massachusetts, and Agtuca, Piercy and St. Peter, from Washington, contend that the plans submitted for their respective states are constitutionally deficient. They insist that each plan must be supplemented by state law "starter volumes" located at USP-Marion.
 
 
 28
 We must reject at the outset any argument that "starter volumes" are indispensible. An adequate law library is but one acceptable method of providing access to the courts. Bounds v. Smith, supra, 430 U.S. at 830, 97 S.Ct. at 1499; Kelsey v. State of Minnesota, 622 F.2d 956, 957 (8th Cir.1980). Among the alternatives to a complete library is the use of staff attorneys from legal services offices. Bounds v. Smith, supra, 430 U.S. at 831, 97 S.Ct. at 1499. This is the alternative chosen by Massachusetts and Washington. The General Counsel to the Massachusetts Department of Corrections provided a list of eight legal service resources available to Massachusetts prisoners for criminal and civil proceedings.[8] The Secretary of the Washington State Department of Corrections detailed the provisions of contracts the state has with a law firm and with a legal service organization for the provision of legal services for inmates transferred out of state.[9]
 
 
 29
 The magistrate correctly concluded that the law library system at USP-Marion, without state law materials or supplemental legal aid, was inadequate. He aptly characterized the Shawnee Library System's requirement for precise citations for photocopying as a "Catch 22" because the inmate could obtain state law materials only by providing precise citations, and could obtain precise citations only if he could refer to state law materials. See Rich v. Zitnay, 644 F.2d 41, 43 (1st Cir.1981). We believe that the magistrate correctly decided that the plans submitted by Massachusetts and Washington in accordance with his order adequately remedied this deficiency in the library system at USP-Marion. Through the systems described in these plans, state prisoners can obtain, at very least, the citations needed to utilize the otherwise adequate library system at the prison.
 
 
 30
 The instant cases are distinguishable from Buise v. Hudkins, 584 F.2d 223 (7th Cir.1978), cert. denied, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979), in which this court held that a statute requiring the state public defender to provide assistance to inmates was inadequate to meet the state's burden of showing that this was an adequate alternative to a law library. Id. at 228. Rather, the cases before us are more similar to Hohman v. Hogan, 458 F.Supp. 669 (D.Vt.1978), in which a Vermont prisoner in federal custody at USP-Marion claimed that he was deprived of access to Vermont courts by the lack of Vermont law books at the prison. The court held that the state Defender General's office operated in a way to provide a constitutionally adequate alternative to a Vermont law library, when considered in conjunction with the library services available at USP-Marion. Id. at 673. In Buise, a bare statute purporting to describe the services the public defender should perform was insufficient to prove that the public defender was an adequate alternative to a well-stocked law library. In Hohman, the services actually available through the public defender's office was held adequate when coupled with the prison library services. In the instant cases, the prison officials have presented, pursuant to court order, affidavits from persons closely associated with the state prison systems attesting to the legal services currently available to out-of-state prisoners.
 
 
 31
 The appellants contend that anything less than a state law library infringes on their right to self representation secured by Faretta v. California, 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562 (1975). Assuming, arguendo, that Faretta extends to include the suits the appellants wish to bring, we do not read the Supreme Court's decision in Bounds as imposing a duty to provide the appellants with state law libraries in the event that they choose not to accept adequate alternative services. See Hohman v. Hogan, supra, 458 F.Supp. at 673.
 
 
 32
 Appellants from Washington attempt to establish by supplemental affidavit that the Washington plan is inadequate. That affidavit, from the litigation coordinator of Evergreen Legal Services, states that actual representation is not contemplated in all cases and that it is probable that requests from out-of-state prisoners would be met with advice by phone or mail to enable the prisoner to pursue a claim or defense himself in lieu of actual representation. The library system at USP-Marion is deficient in state law because prisoners need exact citations to pursue their claims. The supplemental affidavit suggests that the out-of-state prisoner will get just what he needs--advice to enable him to pursue his claim himself. Actual attorney-client representation is not necessary to remedy the library deficiencies.
 
 
 33
 Appellant Little states in his appellate brief that he wrote to all of the agencies listed in the Massachusetts plan and, after two months, had received only three replies, and only one of those three offered any assistance. It may be that some of the plans, as implemented in general or in individual cases, may prove to be deficient. In holding that the Massachusetts and Washington plans are facially adequate, we do not prejudice the appellants' right to challenge the adequacy of the plans as implemented. That challenge, however, was not presented below and is not subject to our review at this time.
 
 
 34
 We affirm the magistrate's holding that the plans submitted by Massachusetts and Washington are facially adequate to provide meaningful access to those state courts when coupled with the library system at USP-Marion.
 
 
 35
 On appeal, appellant Little raises a statutory as well as a constitutional challenge to the USP-Marion law library. State offenders "committed to the Attorney General ... shall be subject to all the provisions of law and regulations applicable to persons committed for violations of laws of the United States not inconsistent with the sentence imposed." 18 U.S.C. Sec. 5003(c). Little contends that the library system violates this provision because federal offenders have direct access to federal law but state offenders do not have direct access to state law. We can locate no authority supporting this proposition, nor can we discover any law or regulation guaranteeing any prisoner in federal custody direct access to any type of law materials. We must therefore reject Little's statutory challenge to the library system.
 
 
 36
 Because appellants Piercy, St. Peter and Little appeal only on the issue of access to the courts, we affirm the judgment in favor of the prison officials in these three cases.
 
 C. Due Process and Interstate Transfers
 
 37
 The final issue remaining for our review is the claim that due process was violated when state prisoners were transferred into federal custody without procedural safeguards. In addressing this issue, we concern ourselves only with Corgain and Agtuca, since we have held that Souza's claim is moot and the other appellants do not appeal this issue.
 
 
 38
 The prison officials contend that the due process attack on the transfers is not properly before this court because the appellants made only a statutory challenge to the transfers below. The appellants did raise a statutory challenge to their transfers, alleging that the transfers were in violation of 18 U.S.C. Sec. 5003 and contrary to our decision in Lono v. Fenton, 581 F.2d 645 (7th Cir.1978) (en banc ). The magistrate correctly recognized that the statutory claims were controlled by a recent Supreme Court decision (which effectively overruled Lono ) holding that 18 U.S.C. Sec. 5003 does not restrict or limit the use of federal prison facilities to those state prisoners who are in need of some particular treatment that cannot be provided by the state. Howe v. Smith, 452 U.S. 473, 482, 101 S.Ct. 2468, 2474, 69 L.Ed.2d 171 (1981).
 
 
 39
 Although the main thrust of the challenges to the transfers was statutory, we believe that the petitions of both Corgain and Agtuca, liberally construed as required with pro se petitions, Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), also raise a constitutional challenge to their transfers. Corgain in fact plainly alleges that his transfer was "without due process of law." Agtuca alleges in a document supporting his petition that the transfer infringed on a protected liberty interest. Accordingly, we hold that the due process claims of Corgain and Agtuca were raised below and are properly before this court.
 
 
 40
 Corgain and Agtuca contend that officials of their respective states of Massachusetts and Washington had a duty to provide certain procedural safeguards before the transfer, and that federal officials had an independent duty to ensure that the states had satisfied those due process requirements before allowing the prisoners to enter into or remain in federal custody. Although the latter alleged duty is at issue in this case because the appellants have brought these actions against federal officials, the alleged duty on the part of the state officials is of critical relevance. According to appellants' argument, any duty on the part of federal officials would depend on the existence of some duty on the part of state officials.
 
 
 41
 Corgain and Agtuca contend that they were deprived of a protected liberty interest without due process of law. They point to both the federal Constitution and state law as sources of this liberty interest.
 
 
 42
 We must reject the contention that there is a federal liberty interest in remaining in state custody. Although the Supreme Court has not addressed the issue of a federal liberty interest in the context of interstate transfers, we find the analysis of Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), dealing with intrastate transfers persuasive. In that case, the Court stated:
 
 
 43
 We reject at the outset the notion that any grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause ....
 
 
 44
 Similarly, we cannot agree that any change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause. The Due Process Clause by its own force forbids the State from convicting any person of crime and depriving him of his liberty without complying fully with the requirements of the Clause. But given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution....
 
 
 45
 ... [T]he Due Process Clause [does not] in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits of range of custody which the conviction has authorized the State to impose. That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules.
 
 
 46
 Id. at 224-25, 96 S.Ct. at 2538 (citation omitted) (emphasis in original). We can discern no valid reason why this analysis does not apply equally to interstate transfers into federal custody. If a state has a contract with the Attorney General allowing these transfers, the transfer is within the range of custody the State is authorized to impose. The factor determining whether due process is invoked "is the nature of the interest involved rather than its weight." Id. at 224, 96 S.Ct. at 2538. The fact that a transfer into federal custody may produce greater hardships than an intrastate transfer, or that transfers into federal custody may not be as frequent as intrastate transfers, does not distinguish the nature of the interest involved in one instance from that involved in the other. A prisoner has no federal liberty interest in remaining within the state prison system any more than he has such an interest in remaining at a particular institution within the state system.
 
 
 47
 The case upon which the appellants principally rely in asserting the existence of a federal liberty interest is Gomes v. Travisono, 490 F.2d 1209 (1st Cir.1973), vacated and remanded, 418 U.S. 909, 94 S.Ct. 3200, 41 L.Ed.2d 1155 (1974), modified on reconsideration, 510 F.2d 537 (1st Cir.1974). The court in that case found a federal liberty interest springing from the grievous loss occasioned by a transfer from state to federal custody. Id. at 1212-14. Gomes, however, was decided without the benefit of the Supreme Court's Meachum v. Fano analysis, which substantially undermines the Gomes underpinnings. The circuit in which Gomes originated recognized this and has retreated from Gomes, stating that in light of Meachum, the Gomes analysis would no longer be applied to interstate transfers. Sisbarro v. Warden, 592 F.2d 1, 3 (1st Cir.), cert. denied, 444 U.S. 849, 100 S.Ct. 99, 62 L.Ed.2d 64 (1979). We join those courts that have extended the Meachum analysis to transfers from one prison system to another prison system. See Ali v. Gibson, 631 F.2d 1126, 1134-35 (3rd Cir.1980), cert. denied, 449 U.S. 1129, 101 S.Ct. 951, 67 L.Ed.2d 117 (1981) (territorial to federal system); Sisbarro v. Warden, supra, 592 F.2d at 3 (state to federal system); Fletcher v. Warden, 467 F.Supp. 777, 779 (D.Kan.1979), remanded for dismissal as moot, 641 F.2d 850 (10th Cir.1981), cert. denied, 453 U.S. 912, 101 S.Ct. 3145, 69 L.Ed.2d 995 (1981) (state to federal system); Dozier v. Hilton, 507 F.Supp. 1299, 1307-08 (D.N.J.1981) (state to state transfer); Shakur v. Bell, 447 F.Supp. 958, 960 (S.D.N.Y.1978) (state to state transfer).
 
 
 48
 Appellants would have us find a federal liberty interest in remaining in state custody because the transfers were allegedly made for disciplinary reasons. We must reject this invitation.
 
 
 49
 As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight. The Clause does not require hearings in connection with transfers whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive.
 
 
 50
 Montange v. Haymes, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976), see also Shango v. Jurich, 681 F.2d 1091, 1098 (7th Cir.1982). The reasons for the transfer invoke federal constitutional protection only if those reasons are unconstitutional, and then the restriction is substantive, not procedural. For example, prison officials cannot transfer an inmate in retaliation for his exercise of First Amendment rights. See Buise v. Hudkins, 584 F.2d 223, 229 (7th Cir.1978), cert. denied, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979). There is no substantive limitation on transfers based on a prisoner's misbehavior. We conclude that the allegedly disciplinary motivation for the transfers in itself, invokes neither federal substantive nor procedural limitations.
 
 
 51
 Appellants' final argument for the existence of a federal liberty interest focuses on the "stigma" a transfer into federal custody may inflict on a prisoner. Appellants suggest that such a transfer labels them as trouble-makers and thus may adversely affect the conditions of their confinement at some future point, e.g., when they are eligible for parole. Appellants' reliance on Vitek v. Jones, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), for support of this theory is misplaced. In that case, a Nebraska inmate was transferred to a mental hospital for involuntary psychiatric treatment. The Supreme Court held that this treatment was not authorized by a criminal conviction and sentence to imprisonment. The State could not classify a criminal as mentally ill and subject him to involuntary treatment and the stigmatizing consequences of such treatment without affording him additional due process protections. Id. at 494-95, 100 S.Ct. at 1264. In contrast to involuntary psychiatric treatment, transfers from one prison to another are within the range of custody a State is constitutionally authorized to impose by virtue of a criminal conviction and sentence to imprisonment. See Meachum v. Fano, supra, 427 U.S. at 225, 96 S.Ct. at 2538. As far as any adverse effect a transfer may have on future conditions of confinement, the Supreme Court specifically recognized that intrastate transfers might have such an effect and decided that this possibility would not render the situation substantially different. Id. at 229 n. 8, 96 S.Ct. at 2540 n. 8; see Montange v. Haymes, supra, 427 U.S. at 241 n. 4, 96 S.Ct. at 2546 n. 4. Consideration of the possible future effects that may result from the appellants' transfers is premature at this point. See Meachum v. Fano, supra, 427 U.S. at 229 n. 8, 96 S.Ct. at 2540 n. 8.
 
 
 52
 In summary, we find the analysis of Meachum v. Fano, supra, dealing with intrastate transfers, to be persuasive in the context of transfers from state to federal custody. While individual states may decide that prudent prison administration requires a pretransfer hearing,[10] we hold that the federal Constitution does not mandate such hearings. See Meachum v. Fano, supra, 427 U.S. at 229, 96 S.Ct. at 2540.[11]
 
 
 53
 Having found no federal liberty interest, we now turn our attention to state law. A person's liberty is equally protected whether the liberty arises from the federal Constitution or is a creation of the state. Wolff v. McDonnell, 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). If the state creates a liberty interest in remaining in state custody, the state must provide constitutionally adequate procedural safeguards before the state may deprive a prisoner of that liberty interest by transfer into federal custody.
 
 
 54
 The appellants cite authority for their contention that Massachusetts and Washington have created a liberty interest in remaining in state custody absent misconduct. Because the court below did not address this issue and the record is not adequately developed on this point, we believe the proper course is remanding for full consideration of whether either Corgain or Agtuca have a state-created liberty interest in remaining in state custody. See United States ex rel. Hoover v. Franzen, 669 F.2d 433, 445-46 (7th Cir.1982).
 
 
 55
 Because we are remanding for further consideration of whether state officials breached a state-created liberty interest, we shall defer any decision of whether federal officials have an independent duty to ensure that state officials have complied with due process before accepting custody of state prisoners.
 
 IV
 
 56
 Corgain v. Miller, No. 81-2967 is remanded with instructions to dismiss the access to the courts claim as moot, and for further consideration of the due process claim. Agtuca v. Miller, No. 81-3009, is affirmed on the issue of access to the courts, and remanded for further consideration of the due process claim. Ortega v. Miller, No. 81-2990, and Souza v. Miller, No. 82-1157, are remanded with instructions to dismiss as moot. Piercy v. Miller, No. 82-1447, St. Peter v. Miller, No. 81-2996, and Little v. Miller, No. 81-2965, are affirmed. Johnson v. Miller, No. 82-1023, is reversed and remanded for further proceedings.
 
 
 
 *
 The Honorable John R. Bartels, Senior District Judge for the Eastern District of New York, sitting by designation
 
 
 [1]
 This order may have been overly broad, since it appears that the petitioners did not represent every state housing prisoners at Marion. The scope of the order, however, is not at issue on appeal
 
 
 [2]
 Another petitioner from the consolidated group below also appealed. That appeal, Sundiata Acoli (aka Clark Squire) v. Harold Miller, No. 81-3019, is decided by a separate order
 
 
 [3]
 Ortega, Piercy, St. Peter and Little challenged their transfers below, but they do not appeal on this issue
 
 
 [4]
 Appellants' brief states that Ortega's transfer was with the consent of the court; however, we find nothing in the record supporting this statement
 
 
 [5]
 There is some suggestion that Souza may be returned to USP-Marion after he finishes litigating several matters in Rhode Island. This is not a sufficient showing that he can reasonably expect to be subjected again to the allegedly inadequate library services at USP-Marion (or to allegedly unlawful transfer procedures); therefore, his claim is moot. See Fletcher v. Warden, 641 F.2d 850, 852 (10th Cir.), cert. denied, 453 U.S. 912, 101 S.Ct. 3145, 69 L.Ed.2d 995 (1981); cf. Vitek v. Jones, 445 U.S. 480, 486-87, 100 S.Ct. 1254, 1260, 63 L.Ed.2d 552 (1980) (case not moot when petitioner was in fact under threat of being transferred again under allegedly unconstitutional procedures)
 
 
 [6]
 See supra note 5
 
 
 [7]
 In fact, it may be that no Delaware prisoner was a party in the consolidated cases. See supra note 1
 
 
 [8]
 The affidavit submitted by the General Counsel reads, in pertinent part:
 
 
 [5]
 On the information presently available to me, the following are legal resources available to Massachusetts prisoners:
 A. Criminal
 
 
 [1]
 Massachusetts Correctional Legal Services, 294 Washington Street, Boston, MA 02109--Tel. (617) 482-2773--post conviction relief
 
 
 [2]
 Massachusetts Defenders Committee, 120 Boylston Street, Boston, MA--Tel. (617) 482-6212 (statewide public defender system--appointment by court); trial and appellate representation
 
 
 [3]
 United States District Court, 1525 Post Office and Court House, Boston, MA 02109--Tel. (617) 223-2845. Federal Defender and private attorneys appointed under the Criminal Justice Act--Habeas corpus petitions
 
 
 [4]
 State Court Appointments. Private attorneys are appointed directly by courts for trial and appellate representation, on a paid basis, pursuant to Massachusetts General Laws chapter 261, Secs. 27A through 27G (habeas corpus petitions) and Superior Court Rule 53 and Supreme Judicial Court Rule 1:01A (trial and appellate representation for criminal defendants)
 
 
 [5]
 County Programs: Deer Island Legal Services, P.O. Box 112, Winthrop, MA--Tel. (617) 846-2762, and Inmates Legal Services, Billerica, MA--Tel. (617) 667-1711. Inmates confined in the Suffolk County and Middlesex County Houses of Correction are provided representation by counsel located at the institutions
 B. Civil
 
 
 [1]
 Massachusetts Correctional Legal Services, 294 Washington Street, Boston, MA 02109--Tel. (617) 482-2773--Sec. 1983 and other civil matters
 
 
 [2]
 Harvard Prisoner Legal Assistance Project, Harvard Law School, Cambridge, MA--Tel. (617) 495-3127. Civil matters
 
 
 [3]
 Northeastern University Prisoners Assistance Program, 400 Huntington Avenue, Boston, MA--Tel. (617) 542-0663. Civil matters
 
 
 [4]
 Prisoner Legal Assistance Clinic, Western New England Law School, Springfield, MA--Tel. (413) 782-3111
 
 
 [5]
 United States District Court, 1525 U.S. Post Office and Court House, Boston, MA 02109--Tel. (617) 223-2845. Extensive appointment of private attorneys by Court, especially on Sec. 1983 actions filed pro se
 
 
 [6]
 So far as I am aware, the transfer of a Massachusetts inmate to U.S.P. Marion does not render that inmate ineligible for the aforementioned legal services, at least with respect to Massachusetts claims
 
 
 [9]
 The affidavit submitted by the Secretary reads, in pertinent part:
 The State of Washington recently issued a Request for Proposal for the provision of legal assistance by attorneys for prison inmates in the Department's custody. This was done due to the expiration of the existing institutional legal services contract which had been in effect since approximately 1972. One type of service the state indicated was mandatory in this Request for Proposal was the provision of legal assistance, in regard to Washington State law issues for Washington State prisoners transferred out-of-state.
 Pursuant to this Request for Proposal the state accepted two proposals for institutional legal services. A contract for the period of October 1, 1981 through June 30, 1983 ... has been awarded to the law firm of Forsch and Maslan of Seattle, Washington, to provide institutional services to the major institutions in Western Washington. A copy of that contract and subsequent budget amendment is attached to this Affidavit as Attachment No. 1. A review of page 1 of Exhibit A to that contract indicates that among the first three types of services to be provided by the contractor is assistance to inmates transferred out-of-state.
 A second contract, also effective for the same period ... is currently being negotiated with Evergreen Legal Services of Seattle, Washington, to provide institutional legal services to inmates housed at the Washington State Penitentiary in Walla Walla, Washington, the major institution in Eastern Washington. Final negotiations as to staffing levels provided under the contract are currently under way. Again, as required by the Request for Proposal, the contract binds Evergreen Legal Services to provide legal services to inmates transferred out-of-state on issues involving Washington State law.
 These contracts do not anticipate face-to-face contact between attorney and client (except in unusual circumstances), nor the filing of lawsuits in other jurisdictions on issues unrelated to Washington defendants or Washington's state laws. The contracts do provide for the cost of telephone communication and litigation costs in Washington Courts, both state and federal. The services to be provided would include representation in both post conviction actions and civil rights actions.
 It is anticipated that within the next month the Department of Corrections will develop a method to insure that inmates transferred out-of-state or currently housed out-of-state who wish to pursue meritorious claims are not only aware of the existence of this means of access, but also are aware of how to request legal assistance from either of the contractors. The state will develop a method for determining which of the two contracted firms will represent a particular inmate, based on either a ratio basis, by sentencing jurisdiction, by the institution from which the prisoner has been transferred or at the option of the inmate. In any event, prisoners housed out-of-state will have access to attorneys employed by either one, or both, of the contractors.
 In conclusion, these contracts will insure that inmates transferred out of the State of Washington either to other state or federal facilities, including the Marion Federal Penitentiary, will have attorneys available to them for representation on meritorious claims related to their confinement.
 The negotiations with Evergreen Legal Services eventually led to approval of a contract. The magistrate then approved the Washington plan.
 
 
 [10]
 Indeed, states may well decide that summary, unilateral transfers are inimicable to rehabilitative goals. One petitioner alleges that he was summoned from his cell without any prior notice and was told he was "going somewhere." When he asked where he was going, he was told he would find out when he got there. Officials finally told him what was happening as he was being taken to the airport. Such treatment no doubt can create hostility and resentment that may greatly hamper rehabilitation. Yet we cannot compel states to do what we might believe is wise and salutary. We can only prohibit states from doing what is unconstitutional
 
 
 [11]
 After this opinion had been approved, the Supreme Court decided Olim v. Wakinekona, --- U.S. ----, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983), which confirms our conclusion that the Meachum v. Fano analysis applies to interstate prisoner transfers