**Mark LaRUE, Plaintiff,**

**v.**

**James W. FAIRMAN, et al., Defendants.**

**No. 89 C 8346.**

United States District Court,
N.D. Illinois, E.D.

Dec. 6, 1991.

judgment, and compensatory and punitive damages.

Defendants have filed a motion for summary judgment, claiming that LaRue received adequate access to the courts; that he was not prejudiced by defendants' conduct; and that defendants are entitled to qualified immunity. LaRue has filed a response to defendants' motion.

## STANDARD OF REVIEW

Under Fed.R.Civ.P. 56(c), summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The party moving for summary judgment has the initial burden of submitting affidavits and other evidentiary material to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Once the moving party has sustained its initial burden, the opposing party may not rest upon the mere allegations or denials of the pleadings, but instead must come forward with specific evidence, by affidavits or as otherwise provided in Rule 56, showing that there is a genuine issue for trial. The court must then view the entire record in the light most favorable to the nonmoving party. *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir.1988).

## BACKGROUND

LaRue, convicted and sentenced in the state of Washington, was transferred to the Joliet Correctional Center, pursuant to the Interstate Corrections Compact, Ill. Rev.Stat. ch. 38, ¶ 1003–4–4 (1989), on May 20, 1988. While at Joliet, LaRue was appealing his conviction in the Washington state court of appeals.[1] Briefs in LaRue's appeal were due on November 24, 1988.

Mark LaRue, pro se.

Wallace Solberg, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Plaintiff, Mark LaRue, an inmate of the Washington State Department of Corrections, brings this action pursuant to 42 U.S.C. § 1983 against James W. Fairman, warden, and Eugene Venegone, assistant warden, of the Joliet Correctional Center in Joliet, Illinois. LaRue, who was incarcerated in the Joliet Correctional Center at the time his cause of action accrued, claims that defendants denied him his right of access to the courts by deliberately interfering with his access to Washington state legal materials. He seeks a declaratory

1. LaRue at the time was pursuing a collateral attack to his conviction in the form of a Person-al Restraint Petition. *See generally*, Washington R.A.P. 16.

On October 17, 1988, LaRue's Washington attorney, who was representing LaRue in his appeal,[2] moved to withdraw from the case, citing "Mr. LaRue's attitude and general hostility towards the firm." On January 4, 1989, the Washington court of appeals granted the motion to withdraw, and allowed LaRue thirty days to retain alternative counsel. On February 28, 1989, LaRue informed the Washington court of appeals that he was unable to retain counsel.[3] The court informed LaRue that his now *pro se* appeal would be dismissed for want of prosecution on April 5, 1989.

In a letter dated March 16, 1989, the Washington State Department of Corrections informed LaRue that it would send microfilmed Washington law books and a micro-fiche reader to the Joliet Correctional Center for use in his appeal. The letter provided that the state of Illinois had agreed to this procedure, and that the materials would arrive in Joliet "within two weeks."

On March 21 or 22, 1989, LaRue was called to assistant warden Romero's office. Romero told LaRue that his Washington legal materials were in warden Fairman's office and that they had "been there for a while now." Romero then called assistant warden Venegone, who told Romero that he (Venegone) had some of LaRue's legal materials in his office, but that he could not give them to LaRue until warden Fairman authorized their release. On March 24, 1989, LaRue was transferred to the Stateville Correctional Center. As he was leaving the Joliet Correctional Center, LaRue saw Fairman and asked about his legal materials, suggesting that the materials might be transported with him to Stateville in the same car. Fairman allegedly responded: "I'll take real good care of your stuff LaRue." LaRue was taken to State-ville, but did not receive his legal materials until after April 5, 1989. His appeal was dismissed for abandonment on April 7, 1989.

## ANALYSIS

■ The Constitution "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). Prison authorities need not provide both, but they must provide one or the other or a comparable alternative, *id.* at 830–32, 97 S.Ct. at 1499–1500, and the burden is on them to prove the adequacy of the means they provide. *Campbell v. Miller,* 787 F.2d 217, 225–26 (7th Cir.), *cert. denied,* 479 U.S. 1019, 107 S.Ct. 673, 93 L.Ed.2d 724 (1986).

■ Defendants contend that LaRue was provided with adequate access to the courts through his Washington counsel. According to defendants, LaRue, who could not get along with his Washington attorneys, is not entitled to a Washington law library in the alternative. Defendants cite several cases in support of the proposition that "no constitutional right exists mandating that the prisoner in the alternative be provided access to a law library should he choose to refuse the services of court-appointed counsel." *United States ex rel. George v. Lane,* 718 F.2d 226, 227 (7th Cir.1983); *Howland v. Kilquist,* 833 F.2d 639, 643 (7th Cir.1987); *see also Corgain v. Miller,* 708 F.2d 1241, 1250 (7th Cir.1983).

Two factors distinguish the instant case from those cited by defendants: first, LaRue was not provided with court-appointed counsel, and, second, LaRue did not affirmatively choose to proceed with his appeal

---

**2.** The state of Washington contracts with three Washington law firms to provide legal services to Washington prisoners housed out of state. It is not clear from the record whether these firms generally receive some compensation from the state for their services. In LaRue's case, however, it appears that counsel was not appointed, but was rather retained. In any event, LaRue was not proceeding with his appeal as an indi-gent. Accordingly, LaRue was at least expected to pay certain costs up front.

**3.** Of the three Washington law firms taking out of state prisoner cases, one refused to represent LaRue because of a perceived conflict of interest; another withdrew from the case; and the third, Evergreen Legal Services, never answered LaRue's letter requesting representation.

*pro se.* Although the precise nature of the attorney/client relationship at issue in this case is not clear, it is clear that LaRue was not proceeding with his appeal *in forma pauperis.* In fact, LaRue's Washington attorneys refused to proceed with his appeal until LaRue made payment of over $600 in costs. Moreover, LaRue did not *refuse* the services of counsel. Rather, LaRue's attorney withdrew from the case. Defendants contend that LaRue's alleged refusal to cooperate with counsel was tantamount to a dismissal. However an examination of the evidence submitted by both parties indicates that much of LaRue's dissatisfaction with his Washington counsel was occasioned by legitimate frustration with the way his attorney was proceeding with the appeal.

In *United States ex rel. George v. Lane, supra,* the trial court gave the plaintiff repeated warnings about the propriety of proceeding without the assistance of counsel. Nonetheless, the plaintiff knowingly and voluntarily chose to proceed on his own. In order to protect the plaintiff's interests, the trial court appointed a public defender to act as "stand-by counsel," to assist with the preparation of plaintiff's case. Moreover, the plaintiff had requested and been provided with numerous copies of relevant cases, as well as copies of Illinois Supreme Court Rules and Civil Practice Act, subpoena forms, *McCormick on Evidence,* and the Illinois Pattern Jury Instructions available to him at trial. 718 F.2d at 229. Similarly, in *Howland v. Kilquist, supra,* the plaintiff, dissatisfied with the performance of counsel, filed a motion to proceed *pro se.* The trial court granted the motion, but appointed an attorney to act as "stand-by counsel." 833 F.2d at 641.

In contrast to the cases cited by defendants, LaRue did not ask to represent himself. Although not an ideal client, LaRue was attempting to work with his Washington counsel, as is evidenced by his attempts to make partial payment[4] and his repeated requests that his attorney proceed quickly with the appeal. LaRue's transfer out of

state made communication between attorney and client an extremely difficult undertaking, and hampered his ability to retain alternative counsel when his original attorney withdrew from the case. In response to all of these problems—some caused by LaRue, others caused by circumstances beyond LaRue's control—the state of Washington decided to provide LaRue with access to Washington legal materials. Accordingly, based upon the evidence now contained in the record, the court cannot find that the state offered and LaRue knowingly refused the assistance of counsel.

■ Defendants next contend that they are entitled to summary judgment because LaRue has failed to show any prejudice resulting from defendants' conduct. In *Hossman v. Spradlin,* 812 F.2d 1019, 1021–22, n. 2 (7th Cir.1987), the court stated:

> We are ... firmly of the opinion that, in order to proceed to trial and survive a motion for summary judgment, a plaintiff should be required, no matter how minimally, to allege some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation.

The court finds that the dismissal of LaRue's criminal appeal clearly amounts to a sufficient "quantum of detriment" to withstand a motion for summary judgment. Moreover, defendants' conduct was a significant cause of that dismissal. Although it is true that LaRue's appeal brief was already almost four months late at the time Washington officials agreed to send LaRue his legal materials, LaRue would have had ample time to prepare a brief in advance of the Washington court of appeals' April 5 deadline if he had been provided with prompt access to those materials. According to LaRue, assistant warden Romero informed him on March 21 or 22 that his Washington legal materials had already arrived at Joliet, and were sitting in defendants' respective offices. LaRue claims

---

4. One of the sources of hostility between LaRue and his attorney was counsel's refusal to accept several attempts by LaRue to make partial payment of costs.

that he made several requests to look at the materials and informed defendants of his need to act quickly. LaRue's allegation that defendants intentionally delayed access to the materials until after LaRue's appeal had been dismissed is sufficient to support an inference that defendants' conduct resulted in prejudice to LaRue's right of access to the courts.

■ Finally, defendants contend that they are entitled to qualified immunity. The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Whether an official is protected by qualified immunity turns upon the objective legal reasonableness of the action, in light of legal rules clearly established at the time the action was taken. The contours of the right allegedly violated must be sufficiently clear so that a reasonable official would understand that what he or she is doing violates that right. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). In support of their claim of qualified immunity, defendants contend the following:

a) it is not clearly established that plaintiff has a right [to] legal counsel *and* law materials; b) it is not clearly established that plaintiff can be considered to have

been denied access to the Courts in the absence of a showing of prejudice; and c) it is not clearly established that a delay in providing legal materials due to security considerations is actionable.

With respect to defendants' first contention, it is in fact clearly established that prisoners do *not* have a right to both legal counsel and law materials. Access to legal materials is but one means of providing inmates access to the courts, and the choice is to be made by prison officials. *See Corgain v. Miller*, 708 F.2d 1241, 1248 (7th Cir.1983), *citing, Bounds v. Smith*, 430 U.S. at 830, 97 S.Ct. at 1499. In the instant case, the state of Washington initially chose to provide LaRue at least *access* to an attorney.[5] When the relationship between LaRue and his attorney broke down, the state of Washington chose to provide LaRue an alternative means of access to the courts. State of Illinois officials agreed to this alternative.[6] The question presented by the instant case therefore is whether, having agreed to provide LaRue access to legal materials, defendants violated clearly established law by intentionally delaying access to those materials until after LaRue's appeal had been dismissed, despite LaRue's repeated insistence that time was of the essence. In other words, is it objectively reasonable for prison officials to agree to provide a prisoner one means of access to the courts, and then intentionally delay the enjoyment of the means provided until it is effectively too late? This court thinks not.[7] Such intentional interference

---

**5.** *See Corgain v. Miller*, 708 F.2d 1241 (7th Cir. 1983), in which the Seventh Circuit found the Washington state plan *facially* adequate. In that case, however, the court noted:

> It may be that some of the plans, as implemented in general or in individual cases, may prove to be deficient. In holding that the ... Washington [plan is] facially adequate, we do not prejudice the appellants' right to challenge the adequacy of the plan[] *as implemented.* That challenge, however, was not presented below and is not subject to our review at this time. (Emphasis in original).

*Id.* at 1251.

**6.** LaRue suggests in his response to the motion for summary judgment, that the existence of this agreement presupposes some knowledge on the part of defendants that some accommoda-

tion would have to be made to provide LaRue access to those materials. The court finds this a reasonable inference.

**7.** In reaching this conclusion, the court is mindful of the Supreme Court's admonition that allegations of bad faith or malice are insufficient to overcome qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. at 815–19, 102 S.Ct. at 2736–38. Nonetheless, "[i]t is impossible to know which 'clearly established' rules of law to consult unless you know what is going on." *Eliot v. Thomas*, 937 F.2d 338, 342 (7th Cir.1991). In other words, facts play a role in any qualified immunity analysis. The existence of the agreement between the state of Washington and the state of Illinois, as well as the defendants' knowledge of LaRue's situation are all relevant

with an inmate's right of access to the courts has long violated clearly established constitutional law. *See Bonner v. Coughlin,* 517 F.2d 1311 (7th Cir.1975) (Stevens, J.), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1976); *Sigafus v. Brown,* 416 F.2d 105 (7th Cir.1969); *see also Gregory v. Nunn,* 895 F.2d 413, 415 (7th Cir.1990) (*per curiam* ). Accordingly, defendants' first contention does not support qualified immunity.

Defendants' second contention, that it was not clearly established that an inmate can be considered to have been denied access to the courts in the absence of a showing of some prejudice, is also correct as stated. However, since the court has found that the record read in the light most favorable to LaRue shows sufficient prejudice, defendants' second contention does not support qualified immunity.

Finally, defendants' third argument in favor of qualified immunity is that it was not clearly established that a delay in providing access to legal materials due to legitimate security justifications is actionable. Again defendants are correct in their statement of the law. Nonetheless, prison officials bear the burden of proving a legitimate security justification. *Williams v. Lane,* 851 F.2d 867, 878 (7th Cir.1988), *cert. denied,* 488 U.S. 1047, 109 S.Ct. 879, 102 L.Ed.2d 1001 (1989). In the instant case, defendants have advanced no legitimate security justification for their actions, and have thus not met their burden of proof.[8] Accordingly, defendants are not entitled to qualified immunity.

## CONCLUSION

For all the foregoing reasons, defendants' motion for summary judgment is DENIED.

---

facts in determining whether defendants' conduct was objectively reasonable.

8. If, in a subsequent motion, defendants are able to prove such a security justification, they may very well be entitled to summary judgment.